Stephen LUCIUS, on behalf of himself
and all other persons similarly
situated, Plaintiff,

v.

BAYSIDE FIRST MORTGAGE, INC.
and First Plus Financial, Inc.,
Defendants.

No. 98–2877–DV.

United States District Court,
W.D. Tennessee,
Western Division.

March 31, 1999.

G. Ray Bratton, Farris Mathews Branan & Hellen, Memphis, TN, Gregory W. O'Neal, Farris Mathews Branan & Hellen, Memphis, TN, for Stephen Lucius.

Earle J. Schwarz, Waring Cox, Memphis, TN, for Bayside First Mortgage, Inc.

John B. Philip, Crislip Philip & Associates, Memphis, TN, for First Plus Financial, Inc.

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

DONALD, District Judge.

Before the court are the motions of defendant, Bayside First Mortgage, Inc., and defendant, First Plus Financial, Inc., to dismiss the action for lack of subject matter jurisdiction. For the following reasons, defendants' motions are granted.

### I. Background Facts

On or about August 17, 1996, Plaintiff obtained a home mortgage loan from Bayside First Mortgage Inc. ("Bayside") in the principal amount of twenty-five thousand dollars ($25,000.00) and at the interest rate of 14.99%. (Complaint ¶ 8, Bayside's Memorandum p. 1). Plaintiff also paid Bayside a loan origination fee of two thousand three hundred forty dollars ($2,340.00). (Bayside's Memorandum pp. 1– 2). Bayside subsequently sold Plaintiff's loan to First Plus Financial Services ("First Plus"). (Bayside's Memorandum p. 2).

On May 29, 1998, Plaintiff filed a complaint with the Tennessee Department of Financial Institutions claiming that he was charged an excessive interest rate and excessive loan charges on the subject loan. (Affidavit of Stephen Lucius ¶ 5). First Plus subsequently reduced the interest rate on Plaintiff's loan to 12.25% and issued Plaintiff a check for one thousand sixty-four dollars ($1,064.00), which allegedly represented all interest Plaintiff paid on the loan in excess of 12.25%. (Lucius Affidavit ¶ 6, Bayside Memorandum p. 2). Bayside also issued Plaintiff a check in the amount of one thousand eight hundred forty dollars ($1,840.00), which allegedly represented the amount Plaintiff paid in excess of the loan origination fee. (Lucius Affidavit ¶ 6, Bayside Memorandum p. 2).

On October 2, 1998, Plaintiff filed the present action on behalf of himself and all other persons similarly situated (hereinafter collectively referred to as "Lucius") alleging the Defendants violated Tennessee Code Annotated Sections 47–14–102 et seq. Plaintiff asserts subject matter jurisdiction based on diversity of citizenship and an amount in controversy in excess of $75,000 pursuant to 28 U.S.C. § 1332. Defendant, Bayside filed its motion to dismiss on January 25, 1999. On February 24, 1999, Defendant, First Plus Financial, filed its motion to dismiss and supporting memorandum in which it incorporated by reference as verbatim the statement of the case set forth in Bayside's memorandum.

### II. Standards

The plaintiff bears the burden of establishing subject matter jurisdiction when jurisdiction is challenged by a motion to dismiss. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990). When the existence of the jurisdictional amount is disputed plaintiff bears the burden of proof. *Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir. 1983). Generally, the sum claimed by the plaintiff is sufficient to satisfy jurisdiction provided the claim is made in good faith. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938). But dismissal is justified if it appears from the face of the pleadings, to a legal certainty, that the claim is really for less than the jurisdictional amount. *Id.*

### III. Legal Analysis

Plaintiff alleges in his complaint that he has suffered damages as a result of Defendants' violations of the Tennessee Usury

Statute at T.C.A. § 47–14–102 et seq. Section 47–14–117(c)(1) of the statute provides:

> [W]here, however, the court finds that the lender or creditor has been guilty of unconscionable conduct in a transaction by taking interest, loan charges, commitment fees, or brokerage commissions in excess of the limitations fixed by statute, that lender or creditor shall not be entitled to recover any interest, loan charges, commitment fees, or brokerage commissions with respect to that transaction, and shall be required to refund to the borrower or debtor any loan charges, commitment fees, or brokerage commissions and twice the amount of any interest collected with respect to that transaction, and the borrower shall be entitled to reasonable attorney's fees from the lender.

Plaintiff seeks compensatory and punitive damages from the Defendants. (Complaint ¶ 10). Bayside asserts that Plaintiff cannot recover punitive damages because T.C.A. § 47–14–117 provides Plaintiff's exclusive remedy. (Bayside's memorandum p. 4). The court finds no case in which a Tennessee court has directly ruled on this issue, nor have the parties provided one. The two cases interpreting § 47–14–117, *Brookside Mills v. Gulfkay Leasing, Inc.,* No. 03A01–9101CH00030, 1991 WL 138513 *1 (Tenn.App. July 30, 1991) and *Bank of Crockett v. Cullipher,* 752 S.W.2d 84 (Tenn. Ct.App.1988) both involved questions of whether a cause of action existed under the statute, but neither addressed the specific question of whether punitive damages are available in addition to the statutory remedies. In *Brookside Mills,* the Court of Appeals found that the defendant's allegation of usury under the statute failed because the defendant never actually paid any of the interest charged. The court in *Brookside Mills* found that the defendant did not have a cause of action under T.C.A. § 47–14–117, and therefore, the court did not address the issue of available remedies. *Brookside Mills* at *5.

In *Bank of Crockett,* the Court of Appeals affirmed the trial court's decision that the plaintiff charged the defendant a usurius late charge. *Bank of Crockett* at 93. The Court of Appeals specifically stated that it was "applying the sanctions provided by 47–14–117(c)(1)" and that the bank was not entitled to accrue any interest accruing on the notes from the designated inception date of the so-called "late charge". *Id. In Bank of Crockett,* the issue of punitive damages was not before the court. Therefore, *Bank of Crockett* does not aid the court in determining whether T.C.A. § 47–14–117 is an exclusive remedy.

### A. Calculation of Plaintiff's Damages

The court begins its analysis by examining the computation of damages as alleged by the Plaintiff in his pleadings. In his complaint, Mr. Lucius claims that he seeks punitive as well as compensatory damages, however he does not provide a dollar amount at which he values his damages. (Complaint ¶ 10). In his response to defendant's motion to dismiss, the plaintiff itemizes his damages as follows:

| | | |
|---|---|---:|
| 1. | Interest on the transaction | $40,541.00 |
| 2. | Loan charges | 2,900.00 |
| 3. | Twice the amount of interest collected through the date of trial (assumed 1/1/2000) (total of lines 2 and 3 from the defendant's calculations) | 21,703.24 |
| | SUBTOTAL | $65,144.24 |
| | Less origination fees previously Refunded to the plaintiff | 1,840.00 |
| | TOTAL | $63,304.24 |

(Plaintiff's memorandum p. 8).

Plaintiff claims that the Defendant admits in its memorandum that, for purposes of deciding the motion, the Court may assume that the Defendant engaged in unconscionable conduct and therefore may assume that the Defendant is not entitled to recover any interest whatsoever on the transaction which totals $40,541.00. (Plaintiff's response p. 7). The court finds no basis in § 47–14–117 for the calculation that plaintiff may collect "interest on the transaction." The statute provides, however, that the lender "shall be required to refund to the borrower or debtor any loan

charges, commitment fees, or brokerage commissions and twice the amount of any interest collected with respect to that transaction." T.C.A. § 47–14–117(c)(1). Therefore, the court accepts plaintiff's calculations to the extent that they include the loan charges and twice the amount of interest collected through the date of trial (assumed 1/1/2000) in the amount of $24,-603.24. In his calculations, Plaintiff further reduced his damages by $1,840.00 (the amount of the origination fee previously refunded to him). The court therefore calculates Plaintiff's alleged damages to be $22,763.24. Thus, the court finds that the Plaintiff must establish that he is entitled to $52,236.76 in attorneys fees and punitive damages in order to satisfy the jurisdictional amount.

### B. Calculation of Attorneys Fees

■ It is settled that statutory attorney's fees can be considered in determining whether the jurisdictional amount is satisfied. *Missouri State Life Insurance Co. v. Jones,* 290 U.S. 199, 200, 54 S.Ct. 133, 134, 78 L.Ed. 267 (1933); *Clark v. National Travelers Life Insurance Co.,* 518 F.2d 1167, 1168 (6th Cir.1975). Section 47–14–117(c)(1) explicitly provides that the borrower shall be entitled to reasonable attorney's fees from the lender. The Plaintiff is entitled to reasonable attorneys fees under 47–114–117(c)(1) and therefore, the Plaintiff may include the value of reasonable attorneys fees in his calculations to reach the jurisdictional amount.

In the present case, Plaintiff calculated his attorneys fees based on his alleged compensatory damages in order to reach the jurisdictional threshold of $75,000.00. (Plaintiff's memorandum p. 9) [1]. Since the court disagrees with Plaintiff's calculation of his compensatory damages, it will not include a percentage of attorneys fees based on that calculation in Plaintiff's dam-

ages. Therefore, the court deems the amount of attorneys fees to be included in Plaintiff's estimated damages to be undetermined for purposes of this motion.

### C. Punitive Damages

■ A punitive damage claim must be included in determining whether the jurisdictional amount is satisfied unless such damages are barred by the applicable state law. *Wood v. Stark Tri–County Building Trades Council,* 473 F.2d 272, 274 (6th Cir.1973). Thus, the question remains whether T.C.A. § 47–14–117(c)(1) provides Plaintiff's exclusive remedies or whether Plaintiff is also entitled to punitive damages. Since there are no cases dealing directly with this issue, the question appears to be one of first impression under Tennessee law.

■ The search for the meaning of statutory language must always begin with the statute itself. *Neff v. Cherokee Ins. Co.,* 704 S.W.2d 1, 3 (Tenn.1986). Section 47–14–117(c)(1) provides specific remedies for acts of unconscionable conduct by a lender or creditor in a transaction. The statute does not explicitly state, however, whether those remedies are exclusive. The court finds therefore that § 47–14–117 is ambiguous as it relates to whether the remedies provided therein are the exclusive remedies for a cause of action under the statute. When a statute is ambiguous or when it is not clear what the legislature intended, courts may look to the legislative history to determine the meaning of the statute. *Storey v. Bradford Furniture Co.,* 910 S.W.2d 857, 859 (Tenn.1995). "In interpreting legislative provisions, our role is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Id.* (citations omitted).

Public Acts 1979 Ch. 203 provides that the statute is "An act to revise and restate the general law pertaining to interest and

1. Based on his calculation of his compensatory damages, Plaintiff claims that he would only need to recover an award of attorneys fees less than 20% of his compensatory damages in order to meet the jurisdictional amount (Plaintiff's memorandum p. 9).

other charges by lenders or creditors, the incidents and consequences thereof, and the remedies, procedures, limitations and penalties with respect thereto ..." The Legislature's use of the terms "remedies" and "penalties" in its description of the purpose of the statute persuasively supports Bayside's position that the Legislature expressed its intent that the penalties imposed in the statute be exclusive.

Tennessee jurisprudence reveals that the Usury Statute has altered the nature of claims of usury. Prior to the enactment of the Tennessee Usury Statute, all usurious contracts were absolutely void, but now such contracts are void or voidable only as to the usury, and an action may exist at law or in equity for the amount in excess of the legal limit. 24 Tennessee Jurisprudence § 15 (1985). Whenever the party to whom money is advanced upon a usurious contract is the actor, and discloses the usury, he or she can only avoid the excess over the legal interest. 24 Tennessee Jurisprudence § 16 (1985). The legislative intent of the Tennessee Usury Statute and Tennessee jurisprudence both address available remedies in claims for usury. However, the court finds that these sources do not conclusively answer the question of whether the statute's remedies are exclusive.

 State supreme courts are the ultimate interpreters of state law. *West v. A.T. & T. Co.*, 311 U.S. 223, 236, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940). The court is reluctant to determine the substantive rights existing under Tennessee law before the Tennessee courts have a chance to address the issue. The court therefore undertakes to determine whether it can decide the motion without addressing the issue of whether § 47–14–117 provides the exclusive remedies for actions in usury. The court decides that it can.

 "Punitive damages are only allowable in cases involving torts where the action involves fraud, malice, oppression, or gross negligence, and these damages are not generally allowed in cases founded on breach of contract ...". 9 Tennessee Jurisprudence § 35 (1993). Section 47–14–117 is specifically titled, "Usury or excessive charges—contracts." Therefore, Plaintiff's claim for punitive damages in a contract action is an exception to the general rule. However, the Plaintiff has failed to demonstrate to the court its basis for a claim of punitive damages in the present case.

The court finds that the Plaintiff alleged damages in the amount of approximately $22,763.24. Those damages include the statutory penalty of double the interest collected on the loan. The court finds that Plaintiff failed to allege punitive damages sufficient to establish federal jurisdiction. Plaintiff bears the burden of establishing damages that satisfy the jurisdictional amount. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *Sellers v. O'Connell*, 701 F.2d 575, 578 (6th Cir.1983). The court finds that the Plaintiff has failed to demonstrate to the court by his calculations of damages or by any persuasive authority that he has alleged damages sufficient to satisfy the jurisdictional amount. Therefore, the court finds from the face of the pleadings, to a legal certainty, the Plaintiff's claim is really for less than the jurisdictional amount and dismissal is justified.

### Conclusion

The court finds that Plaintiff has failed to demonstrate that the case involves an amount in controversy in excess of $75,000 and therefore, the court lacks subject matter jurisdiction. Accordingly, Defendants' motions to dismiss are GRANTED.

**IT IS SO ORDERED.**